UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PETER N. MAGEE,                    :
        Plaintiff,                 :
                                   :
    v.                             :    CA 09-122 ML
                                   :
MICHAEL J. ASTRUE, Commissioner,   :
Social Security Administration,    :
        Defendant.                 :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

        This matter is before the Court on the request of Plaintiff
Peter N. Magee ("Plaintiff") for judicial review of the decision
of the Commissioner of Social Security ("the Commissioner"),
denying disability insurance benefits ("DIB") and Supplemental
Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the
Social Security Act, as amended, 42 U.S.C. §§ 405(g) and
1383(c)(3) ("the Act").  Plaintiff has filed a motion to reverse
the decision of the Commissioner.  See Plaintiff's Motion for an
Order Reversing the Decision of the Commissioner (Document
("Doc.") #10) ("Motion to Reverse").  Defendant Michael J. Astrue
("Defendant") has filed a motion for an order affirming the
Commissioner's decision.  See Defendant's Motion for an Order
Affirming the Decision of the Commissioner (Doc. #11) ("Motion to
Affirm").

        This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner's determination that Plaintiff is not disabled is
supported by substantial evidence in the record and is legally
correct.  Accordingly, based on the following analysis, I
recommend that Defendant's Motion to Affirm be granted and that

Plaintiff's Motion to Reverse be denied.

## Facts and Travel

Plaintiff was born in 1961 and was forty-two years old as of his alleged onset date.  (Record ("R.") at 37, 74, 85, 93, 142, 728)  He has at least a high school education, is able to communicate in English, and has past relevant work as a FedEx courier, a landscaper, an apple orchard maintenance person, and a stocker at a pet store.  (R. at 36-37, 96, 98, 104, 124, 132-33, 140, 668-71, 747)

Plaintiff filed applications for DIB and SSI[1] on October 27, 2004, (R. at 42, 74-76), alleging disability since January 6, 2004, due to a fracture of his right heel, depression and anxiety, and substance addiction, (R. at 28, 42, 74, 93, 97, 132, 142).  The applications were denied initially, (R. at 42, 59, 60-63), and on reconsideration, (R. at 42, 58, 65-67), and Plaintiff requested a hearing before an administrative law judge ("ALJ"), (R. at 42, 68).  A hearing was held on August 7, 2006 (the "8/7/06 hearing"), at which Plaintiff, represented by counsel, appeared and testified, as did an impartial medical expert, Louis A. Fuchs, M.D. (R. at 42, 663-90).  An impartial vocational expert, Michael LaRaia, appeared but did not testify.  (R. at 42, 663)  On October 31, 2006, a supplemental hearing (the "10/31/06 hearing") was held, (R. at 42, 691-716), at which Plaintiff again appeared and testified, (R. at 42, 691-92).  Dr. Fuchs and Ronald A. Briere, an impartial vocational expert, also testified.  (R. at 42, 691-92)  The ALJ on November 9, 2006, issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  (R. at 42-50)  Plaintiff requested review by the Appeals

---

[1] The SSI application does not appear in the record, but the ALJ's decision reflects that such application was filed.  (R. at 38); see also Plaintiff's Memorandum in Support of His Motion for an Order Reversing the Decision of the Commissioner ("Plaintiff's Mem.") at 4 n.1.

Council, which in an order dated March 25, 2008, remanded the case to the ALJ for further administrative proceedings.[2] (R. at 10-13)

On remand, in accordance with the Appeals Council's order, (R. at 12), the same ALJ conducted a third hearing on August 6, 2008 (the "8/6/08 hearing"), (R. at 28, 717-51). Plaintiff, represented by different counsel, appeared and testified, (R. at 28, 717-18), as did Stephen R. Kaplan, an impartial medical expert (the "ME"), and Carl Barchi, an impartial vocational expert (the "VE"), (R. at 28, 717-18). On August 20, 2008, the ALJ issued a second decision in which she again found that Plaintiff was not disabled within the meaning of the Act. (R. at 28-38) Plaintiff requested review by the Appeals Council, (R. at 14-15), which on January 30, 2009, declined his request, (R. at 7-9), thereby rendering the ALJ's second decision the final decision of the Commissioner, (R. at 7). Plaintiff thereafter filed this action for judicial review.

### Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

### Standard of Review

Pursuant to the statute governing review, the Court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

---

[2] The Appeals Council noted that Plaintiff had filed a subsequent claim for DIB and SSI on December 8, 2006, and noted that its "action with respect to the current claims renders the subsequent claim duplicate." (R. at 12) The Appeals Council directed the ALJ to "associate the claim files and issue a new decision on the associated claims." (Id.)

remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The
Court's role in reviewing the Commissioner's decision is limited.
Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although
questions of law are reviewed *de novo*, the Commissioner's
findings of fact, if supported by substantial evidence in the
record,[3] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The
determination of substantiality is based upon an evaluation of
the record as a whole.  Id. (citing Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must
uphold the [Commissioner's] findings ... if a reasonable mind,
reviewing the evidence in the record as a whole, could accept it
as adequate to support his conclusion.")(second alteration in
original)).  The Court does not reinterpret the evidence or
otherwise substitute its own judgment for that of the
Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health &
Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the
resolution of conflicts in the evidence is for the Commissioner,
not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health
& Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing
Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

## Law

To qualify for DIB, a claimant must meet certain insured
status requirements,[4] be younger than 65 years of age, file an
application for benefits, and be under a disability as defined by
the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to

---

[3] The Supreme Court has defined substantial evidence as "more
than a mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)
(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct.
206 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I.
1999)(quoting Richardson v. Perales, 402 U.S. at 401).

[4] The ALJ found that Plaintiff met the insured status
requirements of the Act through December 31, 2008.  (R. at 30)

receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[5]  20 C.F.R. §§ 404.1521(a), 416.921(a) (2009).[6]  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a) (2009).

---

[5] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2009).  Examples of these include:

> (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2)  Capacities for seeing, hearing, and speaking;
> (3)  Understanding, carrying out, and remembering simple instructions;
> (4)  Use of judgment;
> (5)  Responding appropriately to supervision, co-workers and usual work situations; and
> (6)  Dealing with changes in a routine work setting.

Id.

[6] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite to one set of regulations only.  See id.

The Social Security regulations prescribe a five step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2009); see also Bowen v. Yuckert,
482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that
scheme, the Commissioner must determine sequentially: (1) whether
the claimant is presently engaged in substantial gainful work
activity; (2) whether he has a severe impairment; (3) whether his
impairment meets or equals one of the Commissioner's listed
impairments; (4) whether he is able to perform his past relevant
work; and (5) whether he remains capable of performing any work
within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The
evaluation may be terminated at any step.  See Seavey v.
Barnhart, 276 F.3d at 4.  "The applicant has the burden of
production and proof at the first four steps of the process.  If
the applicant has met h[is] burden at the first four steps, the
Commissioner then has the burden at Step 5 of coming forward with
evidence of specific jobs in the national economy that the
applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606,
608 (1st Cir. 2001).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the
instant case made the following findings: that Plaintiff had not
engaged in substantial gainful activity since January 6, 2004,
his alleged onset date, (R. at 30); that Plaintiff's heel
impairment, depression, and anxiety constituted severe
impairments, (id.); that Plaintiff did not have an impairment or
combination of impairments which met or medically equaled one of
the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix
1, (R. at 33); that Plaintiff retained the residual functional
capacity ("RFC") to perform sedentary work with no repetitive use
of foot controls and with nonexertional limitations of only

6

occasional crouching, balancing, stooping, climbing, kneeling, and crawling, a moderate[7] limitation in concentration, persistence, and pace, (R. at 33), such that he, secondary to pain, could understand, remember, and carry out simple 1-2-3 step tasks not involving independent judgment making over an eight-hour workday with appropriate breaks approximately every two hours, and a moderate limitation in responding appropriately to customary work pressures secondary to pain, (R. at 34); that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible, (id.); that Plaintiff was unable to perform any past relevant work, (R. at 36); that, considering his age, education, work experience, and RFC, there were jobs which existed in significant numbers in the national economy that Plaintiff was capable of performing, (R. at 37); that Plaintiff had not been under a disability, as defined in the Act, from January 6, 2004, through the date of the ALJ's decision, (R. at 38); that Plaintiff's history of polysubstance abuse/dependence, in remission, was not a contributing factor material to a finding of not disabled, (id.); and that, therefore, Plaintiff was not entitled to a period of disability or DIB or to SSI, (id.).

### Error Claimed

Plaintiff alleges that the ALJ's mental RFC findings, particularly regarding his ability to sustain concentration, persistence, and pace, are not supported by substantial

---

[7] In his RFC finding, the ALJ omitted the word "moderate" when describing Plaintiff's limitation in concentration, persistence, and pace due to pain.  (R. at 34)  However, it is clear from the context that the ALJ found Plaintiff to have a moderate limitation in this area.  (R. at 33)

evidence.[8]

**Discussion**

I.   **The ALJ's Mental RFC assessment is supported by substantial evidence.**

As noted above, the ALJ found that Plaintiff had the RFC to perform sedentary work which did not involve repetitive use of foot controls.  (R. at 34)  She further found that Plaintiff had:

> the nonexertional limitations of occasional crouching, balancing, stooping, climbing, kneeling, and crawling; a limitation in concentration, persistence and pace, such that he, secondary to pain, can understand, remember and carry out simple 1-2-3 step tasks not involving independent judgment making over an 8 hour workday with appropriate breaks approximately every 2 hours; and a moderate limitation in responding appropriately to customary work pressures secondary to pain.

(Id.)  Plaintiff argues that the ALJ's mental RFC findings are erroneous and unsupported by substantial evidence.  Plaintiff makes essentially three points in support of this contention.

First, Plaintiff asserts that the ALJ's finding that Plaintiff "was capable of understanding, remembering[,] and carrying out 'simple, one, two, three-step tasks[,]' with no other mental limitations, was not supported by any medical source of record."  Plaintiff's Memorandum in Support of His Motion for an Order Reversing the Decision of the Commissioner ("Plaintiff's Mem.") at 7.  In Plaintiff's view, the ALJ "arrived at this conclusion on her own, based on her own evaluation of the 'raw medical data.'  She lacked the medical expertise and the authority to do that."  Id. at 7-8.

While it is true that an ALJ is unqualified to translate raw medical data into functional terms, Nguyen v. Chater, 172 F.3d

---

[8] Plaintiff does not contest the ALJ's findings regarding his physical impairments.  Plaintiff's Mem. at 7.

31, 35 (1st Cir. 1999), this principle does not mean that the Commissioner is precluded from rendering common sense judgments about functional capacity based on medical findings so long as he does not overstep the bounds of a lay person's competence and render a medical judgment, see Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  Here, the ALJ based her finding regarding Plaintiff's ability to maintain concentration, persistence, and pace on the RFC assessments from medical sources in the record.  For example, the ALJ stated that she gave "considerable weight," (R. at 33), to the assessment of the state agency reviewing psychologist who on April 4, 2005, "found the claimant with a mild impairment in concentration, persistence and pace," (R. at 33 n.1).[9]  In fact, all three state agency reviewing psychologists found Plaintiff to be mildly limited in the area of maintaining concentration, persistence,

---

[9] The First Circuit has recognized that the assessment of a non-examining medical expert may, in some circumstances, constitute substantial evidence.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)(citing Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)(affirming the Secretary's adoption of the findings of a non-testifying, non-examining physician and permitting those findings to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability)); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988)("It is within the [Commissioner's] domain to give greater weight to the testimony and reports of medical experts who are commissioned by the [Commissioner]."); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (S.S.A.)("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").  "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2)(i) (2009); see also SSR 96-6p, 1996 WL 374180, at *2 ("State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act.").

and pace.  (R. at 417, 457, 593)  Only Thomas J. Paolino, Jr.,
M.D., Plaintiff's treating psychiatrist, found Plaintiff to be
more than mildly limited in that area.[10]  (R. at 622)  Although
Plaintiff complains that "[t]he ALJ did not accept the opinions
of the state agency psychologists, who opined that [Plaintiff]
would have mild limitations of concentration, persistence[,] and
pace."  Plaintiff's Mem. at 7, and that as a result the ALJ's
finding "was not supported by any medical source of record," id.,
the ALJ stated that "[o]ut of an abundance of caution [she] found
the claimant with a moderate impairment," (R. at 33 n.1).  Thus,
the ALJ's determination that Plaintiff was moderately, as opposed
to mildly, limited in his ability to maintain concentration,
persistence, and pace benefitted Plaintiff.

Plaintiff next contends that "the ALJ's mental residual
functional capacity findings were not clear enough to allow for
effective judicial review."  Plaintiff's Mem. at 8.  Plaintiff
notes that while the ALJ found Plaintiff's anxiety and depression
to be severe impairments, "in that they caused a 'moderate'
impairment in his ability to sustain concentration,
persistence[,] and pace," id., in her RFC finding she included no
non-exertional limitations based on Plaintiff's mental
impairments, see id. ("[I]n her residual functional capacity
findings, the ALJ determined that [Plaintiff's] mental
limitations were attributable solely to pain, rather than to his
depression or anxiety.  She did not explain why she found that
[Plaintiff's] pain resulted in mental impairments, but his
depression and anxiety did not.")(internal citation omitted).

Utilizing the "special technique," 20 C.F.R. 404.1520a(a),

---

[10] Dr. Paolino found Plaintiff to be severely limited in his
ability to maintain concentration, persistence, and pace.  (R. at 622)
The Court discusses the ALJ's treatment of Dr. Paolino's opinion infra
at 14-20.

for evaluation of mental impairments, the ALJ concluded that Plaintiff "experience[d] a 'mild' limitation in activities of daily living; a 'mild' impairment in social function; a 'moderate' limitation in concentration, persistence or pace; and 'no' episodes of decompensation o[f] an extended duration during the period at issue." (R. at 33)  Thus, the ALJ found that the "B" criteria requirements were not met.[11]  (<u>Id.</u>)  She further found that the "C" criterion was not met either.[12]  (<u>Id.</u>)  In her RFC assessment, the ALJ included "a moderate[13] limitation in concentration, persistence or pace, (R. at 33), such that [Plaintiff], secondary to pain, can understand, remember and carry out simple 1-2-3 step tasks not involving independent judgment making over an 8 hour workday with appropriate breaks approximately every 2 hours[,]," (R. at 34), and "a moderate limitation in responding appropriately to customary work pressures secondary to pain," (<u>id.</u>).

The ALJ's focus on limitations from pain was logical, given that, according to Plaintiff's counsel at the 8/7/06 hearing, "the basis of the case ... is the problem with the foot," (R. at 666), and Plaintiff testified that of all of the reasons for his alleged disability, the most disabling was his heel, (R. at 667). At the 8/6/08 hearing, Plaintiff's counsel's "main concern [was] the sitting problems that the claimant just testified to," (R. at 743), namely that Plaintiff felt pain in his ankle and hip when

---

[11] The "B" criteria requirements are met when a claimant has "two areas of 'marked' impairment or one ... of 'extreme' impairment[.] (R. at 33); <u>see also</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04 (affective disorders), 12.06 (anxiety related disorders).

[12] The "C" criterion is met when a claimant "has a history of inabililty to function outside a highly supportive living arrangement."  (R. at 33); <u>see also</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04 (affective disorders), 12.06 (anxiety related disorders).

[13] <u>See</u> (R. at 33 n.1.).

sitting, (R. at 742).  Moreover, at no point in any of the three
hearings did Plaintiff's counsel question him regarding
limitations stemming from his mental impairments.[14]  At the
10/31/06, hearing, counsel questioned Plaintiff about his pain
and its effect on his ability to function.[15]  (R. at 709-12)  She
had no further questions.  (R. at 712)  Again at the 8/6/08,
hearing, Plaintiff's counsel focused her brief questioning of
Plaintiff on his pain and the effects therefrom.[16]  (R. at 742-
43)  At the 10/31/06 hearing, counsel asked the VE about
limitations resulting from Plaintiff's need to elevate his foot.
(R. at 715-16)  Counsel asked no questions of the VE at the
8/6/08 hearing.  (R. at 749)

Thus, Plaintiff had ample opportunity to bring to the ALJ's
attention any limitations related to Plaintiff's mental
impairments.  See Matta v. Sec'y of Health & Human Servs., 806
F.2d 287, 290 (1st Cir. 1986)("Claimant was represented by ...

---

[14] The 8/7/06 hearing was continued in order to obtain additional
medical information, (R. at 689-70), so there was no opportunity for
counsel to question Plaintiff.

[15] For example, counsel asked "[w]hen you have the pain, how are
you able to do in terms of concentraion or focusing on things?"  (R.
at 710)  Plaintiff responded that he could not focus very well.  (Id.)

[16] Another illustration of such questioning followed Plaintiff's
testimony that when sitting he felt pain in his hip and ankle, which
caused him to have to shift positions every ten to fifteen minutes.

Q    Do you have to stand up and stretch?

A    Not to stretch.  More to just move my foot.  Kind of to
     get some circulation in there.  My foot actually gets
     cold sometimes.

Q    Okay.  Does that interfere with your ability to
     concentrate at all?

A    Yes, it does.

(R. at 742)

counsel at the hearings.  Counsel had the opportunity to present whatever testimony he wished."); cf. Pearson v. Fair, 808 F.2d 163, 166 (1st Cir. 1986)("[A] party cannot sit silently by, await the entry of judgment, and only then (having seen the result and having been disappointed thereby) bemoan the court's failure to take evidence.").  Accordingly, the Court cannot fault the ALJ for focusing on nonexertional limitations based on Plaintiff's pain, rather than due to his mental impairments, because no limitations based on his mental impairments were brought to her attention.

Moreover, the ALJ gave reasons for her finding that Plaintiff's mental impairments did not cause nonexertional limitations.  After discussing the evidence pertaining to Plaintiff's mental impairments at length, (R. at 31-33), the ALJ stated three times that the limiting effects of Plaintiff's alleged symptoms were not credible to the degree alleged,[17] (R. at 34)("The alleged frequency, severity and duration of the claimant's depression, anxiety and pain is [sic] not supported by the weight of the medical evidence to the degree alleged."); (id.)("Although the claimant has limitations secondary to his physical and emotional impairments, they are not of the severity he alleges."); (R. at 35)("The claimant alleges disability due to depression and anxiety, and the record does establish that he is affected by these impairments, but they are not shown in the record as a whole to be of the severity he alleges.").  The ALJ continued:

> He has not required hospitalization []or crisis intervention.  Records from Dr. Friedman reported the claimant had no anxiety at all in July 2004 after going on Prozac.  May 2005 notes indicate the claimant did not have much anxiety at night and only mild anxiety during

---

[17] Plaintiff does not challenge the ALJ's credibility finding.  See Plaintiff's Mem. at 7-10.

the day.  Dr. Paolino diagnosed the claimant with major depressive disorder, recurrent mild in January 2006 and in March reported the claimant was feeling better once on Xanax.  In September 2007, January, February and April 2008 Dr. Paolino noted the claimant's medications were working good/status quo.

(R. at 35)  The ALJ additionally pointed to Plaintiff's daily activities as evidence that his limitations from his mental impairments were not as severe as alleged:

The claimant is able to perform personal hygiene and grooming without assistance.  He reported no difficulty handling money.  The claimant testified at the hearing that his mother has Alzheimers and that he made her lunch and drove her to appointments.  He testified that he had to lie down most of the day.  The claimant stated that he read 5-6 hours every day, 2-3 hours at one time, and that he watched television 2-3 hours a day, including AMC, the Discovery Channel and the History Channel.

(R. at 34-35); see also (R. at 681-82, 702-06, 721-24).

Lastly, Plaintiff asserts that "the ALJ erred in giving reduced weight to the opinions of [Plaintiff's] treating psychiatrist, Dr. Paolino."  Plaintiff's Mem. at 9.  Although the ALJ gave reasons for finding Dr. Paolino's assessment "not ... probative," (R. at 35), Plaintiff asserts that "[t]he ALJ's reasons for discounting the opinions of the treating psychiatrist were erroneous," Plaintiff's Mem. at 10.

Evaluation of opinion evidence is governed by 20 C.F.R. § 404.1527.  Section 404.1527(d) provides in relevant part that:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that

14

> a treating source's opinion on the issue(s) of the nature
> and severity of your impairment(s) is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in your case record, we will give it
> controlling weight.  When we do not give the treating
> source's opinion controlling weight, we apply the factors
> listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this
> section, as well as the factors in paragraphs (d)(3)
> through (d)(6) of this section in determining the weight
> to give the opinion.  We will always give good reasons in
> our notice of determination or decision for the weight we
> give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2) (2009); see also Social Security
Ruling ("SSR") 96-2p, 1996 WL 374188, at *2 (S.S.A.)(listing
requirements for giving controlling weight to treating source's
opinion); id. ("It is an error to give an opinion controlling
weight ... if it is not well-supported by medically acceptable
clinical and laboratory techniques or if it is inconsistent with
the other substantial evidence in the case record.").  In
evaluating medical opinions, an ALJ is directed to consider the
existence of an examining relationship, the existence of a
treating relationship, the length, nature, and extent thereof,
the supportability of an opinion, the consistency of an opinion
with the record as a whole, the specialization of the source, and
any other factors which the claimant brings to the adjudicator's
attention.  See 20 C.F.R. § 404.1527(d)(2)-(6).  Section
404.1527(e) further provides that:

> Opinions on some issues, such as the examples that
> follow, are not medical opinions ... but are, instead,
> opinions on issues reserved to the Commissioner because
> they are administrative findings that are dispositive of
> a case; i.e., that would direct the determination or
> decision of disability.
> > (1) Opinions that you are disabled.  We are
> > responsible for making the determination or
> > decision about whether you meet the statutory
> > definition of disability.  In so doing, we review
> > all of the medical findings and other evidence that

> support a medical source's statement that you are
> disabled.  A statement by a medical source that you
> are "disabled" or "unable to work" does not mean
> that we will determine that you are disabled.
>
> ....

20 C.F.R. § 404.1527(e); see also Rodriguez v. Sec'y of Health &
Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)("[T]he resolution
of conflicts in the evidence and the determination of the
ultimate question of disability is for [the Commissioner], not
for the doctors or for the courts."); cf. SSR 96-5p, 1996 WL
374183, at *2 (S.S.A.)(noting that even "treating source opinions
on issues that are reserved to the Commissioner are never
entitled to controlling weight or special significance" because
that "would, in effect, confer upon the treating source the
authority to make the determination or decision about whether an
individual is under a disability, and thus would be an abdication
of the Commissioner's statutory responsibility to determine
whether an individual is disabled").

    With regard to Dr. Paolino, the ALJ stated:

> [T]he Administrative Law Judge has carefully considered
> the February 2008 assessment of Dr. Paolino and does not
> find it probative in this case.  Dr. Paolino assessed the
> claimant's GAF at 34.[18]  That is inconsistent with the
> treatment records from Dr. Friedman, and Dr. Paolino's

---

[18] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's
judgment of the individual's overall level of functioning.'" Langley
v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004)(quoting
Diagnostic and Statistical Manual of Mental Disorders (Text Revision
4th ed. 2000) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s]
psychological, social, and occupational functioning on a hypothetical
continuum of mental health-illness." DSM-IV-TR at 34.  A GAF between
31-40 is indicative of "**[s]ome impairment in reality testing or
communication** (e.g., speech is sometimes illogical, obscure, or
irrelevant) **OR major impairment in several areas, such as work or
school, family relations, judgment, thinking, or mood** (e.g., depressed
man avoids friends, neglects family, and is unable to work ...)." Id.

own treatment records.  As discussed above[,] Dr.
Friedman noted in July 2004 that the claimant had no
anxiety at all, and in May 2005 noted the claimant did
not have much anxiety at night and only mild anxiety
during the day.  Dr. Paolino diagnosed the claimant with
major depressive disorder, recurrent mild in January 2006
and in March reported the claimant was feeling better
once on Xanax.  In September 2007, January, February and
April 2008 Dr. Paolino noted the claimant's medications
were working good/status quo.  During the psychiatric
evaluation in February 2008 the claimant had severe
difficulty remembering any dates, names and events of his
life, treatment experiences[,] hospitalizations, and
other relevant topics. []Dr. Paolino found the claimant
severely impaired in concentration, persistence and pace,
noting the claimant was unable to concentrate and had
difficulty remembering eve[n] the most basic routine or
the most important appointments.  That is contradicted by
the evidence of record, his presentations to various
providers, his presentation at hearing and the claimant's
testimony that he constantly reads and watches
television.  He testified that he read 5-6 hours a day,
2-3 hours at a sitting, watched television 2-3 hours a
day, prepared lunch for his mother who has Alzheimer's
and took his mother to appointments.  The undersigned
found the claimant experienced no difficulty remembering
while giving testimony.  Dr. Paolino found the claimant
moderately severely impaired in social functioning.  That
is not supported by the evidence as a whole.  The
claimant attended AA and NA meeting[s] and did not allege
any difficulties.  The claimant did not allege any
difficulty with social functioning at the hearing.
Furthermore, while the claimant spent a great deal of
time at home the record shows he was on home confinement
for long periods of time and was unable to go out and
socialize.

(R. at 35-36)(internal citations omitted).  Thus, the ALJ found

Dr. Paolino's opinion both inconsistent with the other evidence

of record and unsupported by his own treatment notes.

Plaintiff complains that the ALJ "noted only two instances

of what she considered inconsistencies in the record ...."

Plaintiff's Mem. at 9.  However, an ALJ is not required to

address every piece of medical evidence in the record.

Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004); see also Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)("An ALJ's failure to cite specific evidence does not mean that such evidence was not considered."); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995) ("[A]n ALJ need not provide a complete written evaluation of every piece of testimony and evidence.")(citation omitted). Moreover, the ALJ had already thoroughly summarized the evidence pertaining to Plaintiff's mental impairments.

Plaintiff also suggests that the ALJ's interpretation of Dr. Friedman's notes was erroneous. See Plaintiff's Mem. at 9 ("While Dr. Friedman did note in July of 2004 that [Plaintiff] was not experiencing anxiety, most of his prior and subsequent notes reflect the presence of increased or ongoing anxiety as well as depressive symptoms."). A review of Dr. Friedman's notes, however, reveals more than a single positive reference regarding Plaintiff's anxiety. (R. at 397, 400, 403, 432) Moreover, it is the ALJ's responsibility to resolve conflicts in the evidence and draw reasonable inferences therefrom. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts.")(citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981))(internal citation omitted); see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987)("Conflicts in the evidence are, assuredly, for the [Commissioner]—rather than the courts—to resolve."). The Court additionally observes that on one of the occasions on which Dr. Friedman reported "ongoing anxiety," (R. at 399), he also stated that Plaintiff "came completely off Neurontin on [his] own

18

...," (id.), and that Dr. Friedman "restart[ed] Neurontin,"
(id.).

Plaintiff further contends that the ALJ had no basis for her
finding that Dr. Paolino's opinions were inconsistent with his
notes that Plaintiff's condition was "status quo," Plaintiff's
Mem. at 9, "or for inferring that 'status quo' indicated
improvement or the absence of serious symptoms," id.  The notes
to which Plaintiff refers are office forms which list symptoms,
such as anxiety, depression, and insomnia, and include columns
entitled "Meds Working Good/Status Quo" and "Meds Not Working
Need to Be Changed[.]"  (R. at 625-29)  More often than not, Dr.
Paolino indicated that Plaintiff's medications and symptoms were
"status quo."  (Id.)  Contrary to Plaintiff's implication, it was
reasonable for the ALJ to infer that the fact that Plaintiff's
condition was "status quo" meant that it was not worsening.  See
Rodriguez, 647 F.2d at 222 ("We must uphold the [Commissioner's]
findings ... if a reasonable mind, reviewing the evidence in the
record as a whole, could accept it as adequate to support his
conclusion.").

Finally, Plaintiff challenges the ALJ's reliance on his
activities of daily living and presentation at the hearings as
inconsistent with Dr. Paolino's opinion.  However, an ALJ is
required to investigate "all avenues presented that relate to
subjective complaints ...."  Avery v. Sec'y of Health & Human
Servs., 797 F.2d 19, 28 (1st Cir. 1986).  When assessing the
credibility of an individual's statements, the ALJ must consider,
in addition to the objective medical evidence, the following
factors:

1.   **The individual's daily activities;**
2.   The location, duration, frequency, and intensity of the
     individual's pain or other symptoms;
3.   Factors that precipitate and aggravate the
     symptoms;

19

4.   The type, dosage, effectiveness, and side effects
     of any medication the individual takes or has taken
     to alleviate pain or other symptoms;
5.   Treatment, other than medication, the individual
     receives or has received for relief of pain or
     other symptoms;
6.   Any measures other than treatment the individual
     uses or has used to relieve pain or other symptoms
     (e.g., lying flat on his or her back, standing for
     15 to 20 minutes every hour, or sleeping on a
     board); and
7.   Any other factors concerning the individual's
     functional limitations and restrictions due to pain
     or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (bold added); see also Avery,
797 F.2d at 29 (listing factors relevant to symptoms, such as
pain, to be considered); 20 C.F.R. § 404.1529(c)(3) (2009)
(same). As for Plaintiff's statement that the ALJ was not
"qualified to judge [Plaintiff's] 'presentation at hearing,'"
Plaintiff's Mem. at 10, SSR 96-7p states that "[i]n instances
where the individual attends an administrative proceeding
conducted by the adjudicator, the adjudicator may also consider
his or her own recorded observations of the individual as part of
the overall evaluation of the credibility of the individual's
statements."  SSR 96-7p, 1996 WL 374186, at *5.

     The Court finds Plaintiff's arguments unpersuasive.  As
noted previously, no other medical source opined that Plaintiff
was as severely limited as did Dr. Paolino.  In fact, Dr.
Friedman's office note of February 4, 2005, emphasized that
Plaintiff should "[w]ork!!"  (R. at 405)  Thus, the Court finds
that the ALJ's determination to afford little probative weight to
Dr. Paolino's opinion is supported by substantial evidence in the
record.

     The Court further finds that the ALJ's mental RFC findings
are supported by substantial evidence.  I therefore recommend
that the Commissioner's decision that Plaintiff is not disabled

be affirmed.

## Conclusion

The Court finds that the ALJ's mental RFC findings and her determination that Plaintiff is not disabled within the meaning of the Act are supported by substantial evidence in the record and are legally correct.  Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 28, 2010